

**JAMES E. JOHNSON**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**BRACHAH GOYKADOSH**
*Senior Counsel*
bgoykado@law.nyc.gov
Phone: (212) 356-3523
Fax: (212) 356-1148

March 23, 2020

**By ECF**
Honorable Barbara C. Moses
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Herminio Robles. v. City of New York, et al.*, 19 Civ. 6581 (AT) (BCM)

Your Honor:

  I am a Senior Counsel in the Office of James E. Johnson, Corporation Counsel of the City of New York, and the attorney assigned to the defense in the above-referenced matter. In that capacity, I write to respectfully:[1] (1) oppose plaintiff's request that the confidentiality designation be removed from certain items produced during discovery; (2) oppose plaintiff's request for sanctions; and (3) cross-move for sanctions against plaintiff. Defendants are forced to cross-move for sanctions against plaintiff not only because he brings a meritless sanctions motion for illegitimate reasons; but because he brings his frivolous motion, squandering the Court and the City's limited resources, during the worst of times, in the middle of a pandemic.

  **I.**  **Relevant Facts & Procedural History.**

  Plaintiff initiated this action on July 15, 2019 pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff complained *inter alia* that member of the New York City Police Department allegedly violated his civil rights on April 18, 2018 when following his arrest one defendant Police Officer Henderson "pushed [p]laintiff […] into the gate of the cells in the precinct, and then to the ground causing [p]laintiff severe pain" and when Henderson "falsely alleged on the Criminal Court Complaint that [p]laintiff kicked [him] in the shin." ECF No. 23, Compl., ¶¶23, 32, 35. This case was designated for participation in Local Civil Rule 83.10. ECF No. 5. Pursuant to Local Civil Rule 83.10, the parties were required to exchange certain discovery. *See* Local Civil

---

[1] While the Court's Rules specify that letters should not exceed 3 pages in length, plaintiff's letter motion was 5 pages. As such, this letter is approximately 7 pages in length. Defendants apologize for the size of this submission; but given that defendants needed to respond to the two arguments raised in plaintiff's motion, cross-move, and also lay out the relevant facts and procedural history for the Court, these extra pages were necessary.

Rule 83.10 (5).  Defendants produced the disciplinary investigation file[2] from the related to this incident.[3]  On January 29, 2020, defendants produced videos of the interaction inside the precinct between plaintiff and Police Officer Henderson.[4]  Upon information and belief, the videos were preserved as part of a disciplinary investigation file associated with the incident and the documents marked confidential were part of this investigation file.[5]  The video depicts the hallway and prisoner cell inside a NYPD precinct where individuals arrested are placed.  The area depicted in the video is not an area viewable or accessible to the general public: indeed, the area is behind a door, through which plaintiff and Police Officer Henderson entered.

Defendants designated these items, including the video, as confidential pursuant to the Local Civil Rule 83.10 standing protective order.  The protective order defines "confidential materials" in part as NYPD personnel and disciplinary-related records and records of investigations regarding the conduct of members of service and also any other documents and information that may in good faith be designated as confidential.  *See* ¶2(a) and 2(d) of Protective Order.  Because the video and documents were part of a disciplinary investigation file, defense counsel believes that the video is confidential.  Furthermore, because the video depicts inaccessible areas of a police precinct, there are security concerns with producing the video without a confidentiality designation.  Defense counsel therefore believes, in good faith, that the security concerns are a second reason to designate the video as confidential.

On January 29, 2020, in an email to defense counsel, plaintiff "rejected" the confidentiality designation on the videos, claiming that because the videos depicted the incident, the clause of the protective order that pertained to the videos was ¶2(d): "documents and information shall not be designated 'Confidential Materials' to the extent that they relate to the incident(s) underlying the Complaint in the action."  In response, defense counsel directed plaintiff's counsel to ¶2(a), the paragraph concerning the confidentiality of materials from a disciplinary investigation.  Immediately following this email exchange—and without conferring in-person or by phone—plaintiff filed a letter to remove the confidentiality designation from the videos.  ECF No. 28.  On the same date, defendants opposed this request, as it violated the Court's Individual Rules & Practices and as was premature, given the procedural posture of the case.  ECF No. 29.  The Honorable Annalisa Torres referred this issue to Your Honor.  ECF

---

[2] These documents bear Bates stamp Nos. DEF00263 through DEF00267.  These documents were produced on January 6, 2020.   Documents bearing Bates stamp Nos. DEF00393 through DEF00403, which were produced on January 13, 2020, include an investigation worksheet from the New York City Police Department concerning this incident and finding that Police Officer Henderson's actions were in compliance with department procedures; an Investigating Supervisor's Assessment Report, which concludes that there was no misconduct by the officers involved and also references the videos of the incident.  Finally, DEF00404 is audio associated with the Internal Affairs investigation.  The undersigned currently does not have access to DEF00404, as it is saved on a compact-disc in her office, where she is not currently permitted to work or visit due to COVID-19 concerns.

[3] Plaintiff now claims that certain documents were "missing" from defendants' production.  As the undersigned is working remotely, she does not have access to her hard case file to verify this assertion by plaintiff.  Nonetheless, this assertion by plaintiff does not appear to affect the relief he requests.  Moreover, plaintiff acknowledges that the entirety of the documents have been produced to him at a different pagination in the production.

[4] Defendants disagree with plaintiff's characterization of the videos.  ECF No. 37.  Moreover, as explained *supra*, this video does not support an allegation of perjury; indeed the Bronx District Attorney's Office chose not to prosecute Police Officer Henderson for perjury.

[5] It is defendants' understanding that this sort of surveillance video from the inside of a precinct is generally not preserved but was in this circumstance due to the disciplinary investigation.

Entry dated January 30, 2020. This Court then denied without prejudice plaintiff's request because of his failure to "first engage[] in meaningful discussion of either the merits of the dispute or the schedule on which relief is required" and because "there [did] not appear to be any need for emergent relief[.]"[6]  ECF No. 30.

On February 3, 2020, plaintiff called defendants to confer. Defense counsel asked plaintiff's counsel numerous times why this issue needed to be dealt with at the instant juncture. On the phone, plaintiff's counsel asserted that he needed to share this video with the Bronx County District Attorney's Office Public Integrity Unit ("BCDA") as he believed that it supported a criminal charge of perjury against Police Office Henderson.  Based on this representation, defense counsel agreed that the confidentiality designation could be removed for the limited purpose of providing the videos to BCDA.  Plaintiff then asserted, by email, that he "must be free to share the video with colleagues, the press, civil rights organizations, or other potentially interested parties[;]" however, he agreed to wait until after any potential mediation in this matter to seek judicial intervention.  Upon information and belief, the BCDA elected not to prosecute Police Officer Henderson as the video did not support a criminal charge of perjury.

On February 13, 2020, defendants served a Rule 68 offer of judgment, which plaintiff accepted on February 17, 2020. ECF No. 35. On February 17, 2020, in an email, plaintiff asked the defendants to reconsider the confidentiality designation and threatened to move for sanctions if defendants did not remove the designation, despite the fact that he agreed to accept a judgement to settle, ending this case. On February 18, 2020, defendants decline to do so.  The parties continued to email about this issue and defendants informed plaintiff that sanctions were inappropriate because this issue was about a disagreement regarding how the protective order should be interpreted and that unless he had "case law supporting [his] position that this disagreement has been clearly addressed by the courts, any motion seeking sanctions would be wholly without merit and would itself constitute sanctionable conduct."  Defendants also informed plaintiff that they would be forced to cross-move for sanctions and any associated attorney's fees, if he filed a motion for sanctions.  Indeed, defendants emphasized that although they believed they properly read the language of the protective order, because reasonable minds could differ and plaintiff pointed to no case law for why his interpretation of the protective order was the correct one, sanctions was inappropriate.

In an email on February 20, 2020, plaintiff demanded that defendants explain their good cause for the confidentiality designation. On February 21, 2020, by email, defendants explained that disciplinary records dealing with the incident have always been deemed confidential under the protective order, which is why the videos were marked accordingly. Furthermore, defendants highlighted the security concerns with disseminating a video depicting a non-public area of a precinct.  Defense counsel stated that had she not believed the instant protective order supported a confidentiality designation, she would have moved for a separate protective order.  On March 4, 2020, the parties conferred again by phone. Following this conversation, defendants again declined to remove the confidentiality designation because "[t]he issue of confidentiality was not

---

[6] Plaintiff complains "at the outset" that the Court's order dated January 31, 2020 was "unfairly critical" of plaintiff's counsel.  ECF No. 31.  Plaintiff then attempts to blame defense counsel for his failure to follow Judge Torres's very clear rules, which require conferring "in person or by telephone, in an effort to resolve the dispute" and a joint letter from the parties describing the dispute.  *See* Individual Rules and Practices of the Honorable Annalisa Torres at Rule II.C.  Contrary to plaintiff's assertions, defense counsel cannot "tell" plaintiff to do anything (nor did defense counsel ever tell plaintiff's counsel to disregard the Court's rules).

one of the terms in the Rule 68 that [defendant] served and [plaintiff] accepted.   Therefore, it is no longer an issue to be considered in this case."   On March 19, 2020, plaintiff filed his instant application seeking removal of the confidentiality designation and sanctions.  ECF No. 37.

## II.    The Confidentiality Designations Were Proper and Should Not Be Removed.

The items identified by plaintiff—two videos and certain documents relating to disciplinary investigations—were properly designated as confidential.  First, the language of the protective order at ¶2(a) is clear. That sub-paragraph states that confidential materials include: "New York City Police Department ("NYPD") personnel and disciplinary-related records, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agencies[.]" Indeed, disciplinary investigation files are never produced by the Office of Corporation Counsel without a protective order in place.  This case is no different.  Upon information and belief, the videos in question were part of the disciplinary file, and would not have been saved but for the fact that they were part of the file. Because the documents and videos relate to a disciplinary investigation, the confidentiality designation is appropriate pursuant to the protective order.

Although ¶2(a) clearly designates these documents as confidential, plaintiff erroneously cites ¶2(d) in asserting that they are not.  Sub-paragraph 2(d) states that confidential materials shall mean: "other documents and information that may in good faith, during the pendency of this litigation, be designated "Confidential Material" by the parties or the Court, except that such documents and information shall not be designated "Confidential Materials" to the extent that they relate to the incident(s) underlying the Complaint in the action, are obtained by the parties by subpoena or pursuant to the New York Freedom of Information Law ("FOIL"), or are otherwise publicly available."  Specifically, plaintiff cites the language at the end of ¶2(d), which states "except that such documents and information shall not be designated '[c]onfidential [m]aterials' to the extent that they relate to the incident(s) underlying the Complaint in the action." However, this language modifies  sub-paragraph ¶2(d) only and not the entirety of paragraph 2. Indeed, to the extent it applied to the entire paragraph, other documents like plaintiff's medical records from the date of incident (paragraph ¶2(b)) would also not be confidential.  That is clearly not the intent of the paragraph, nor has it ever been interpreted in this manner by the Corporation Counsel. Thus, because all the items identified by plaintiff relate to or were from a disciplinary investigation, those items fall within ¶2(a) of the protective order and should remain confidential.

Second, there are security concerns with disseminating videos that depict the non-public areas of a precinct.  As explained *supra*, the videos show an area of the precinct that an ordinary person would not be familiar with.  There is a governmental security interest in having secure locations in precincts that are not accessible or known to the public. These are necessary in order to detain individuals, without the risk of potential escape or potential interference with an arrest and/or detainment.   In addition to the numerous unavoidable risks associated with their responsibilities, police officers should not also be forced to worry that the location in the precinct where they interact with arrestees may not be secure.

Although plaintiff asserts that "[e]veryone already knows that rooms in police precincts have holding cells" and that "it is a far stretch of the imagination that anyone who might be arrested one day by officers [from this precinct] would not only be held in that particular room, but would also know in advance to contact [plaintiff's counsel] to ask him for this video," this

4

flippant argument does not save him.  ECF No. 37.  As an initial matter, just because "everyone knows" that precincts have holding cells, does not mean that "everyone knows" the precise layout and location of holding cells within a precinct, which is what these videos show. Moreover, what plaintiff is requesting is removal of the confidentiality designation so that he can share the videos with various entities.  If the designation is removed, then  "communication" with plaintiff's counsel would not be necessary.  If the video is non-confidential, it can and likely will be widely disseminated on Instagram, Facebook, Twitter, and any other social media platform, and quite possibly the news media as well.  Without question, once the video is public, neither plaintiff's counsel (nor anyone else) can control its dissemination.

Third, that counsel for plaintiff is "routinely contacted" by various entities about members of NYPD is not a reason to remove the confidentiality designation.  While counsel for plaintiff asserts that "any other individual who is charged with a crime by [Police Officer] Henderson *must* be able to contact *me* and obtain this video," he is incorrect. ECF No. 37 at 3 (emphasis added).  There are proper channels for these entities to obtain any information they believe is necessary to defend a criminal action or prosecute a civil rights action, such as a Freedom of Information Law request. Indeed, coordination between the criminal defense bar and counsel for plaintiff is not a reason to remove the confidentiality designation.

### III.   Defendants Should Not Be Sanctioned; Plaintiff Should Be Sanctioned.

#### A.  *The Court Should Not Sanction Defendants.*

Sanctions against defendants are not appropriate under § 1927 or the Court's inherent power.  "To succeed on a motion for sanctions under either…, [plaintiff] must demonstrate 'clear evidence that (1) [defendant's] claims were entirely without color, and (2) the claims were brought in bad faith—that is motivated by an improper purpose, such as harassment or delay.'" *Almonte v. Hines*, No. 15 Civ. 6843 (JFK), 2020 U.S. Dist. LEXIS 43205, at *12-13 (S.D.N.Y. Mar. 11, 2020), quoting *Huebner v. Midland Credit Mgmt., Inc*., 897 F.3d 42, 55 (2d Cir. 2018), quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1282 (2019). Furthermore, "sanctions may only be imposed 'when there is a finding of conduct constituting or akin to bad faith."  *Almonte*, 2020 U.S. Dist. LEXIS 43205, at *13, quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). "A court may infer bad faith when a party undertakes frivolous actions that are 'completely without merit.'" *Almonte*, 2020 U.S. Dist. LEXIS 43205, at *13, quoting *Huebner*, 897 F.3d at 55(quotation omitted).  Sanctions are warranted only when an "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *McCabe v. Lifetime Entm't Servs*., LLC, 761 F. App'x 38, 42 (2d Cir. 2019).

Here, plaintiff fails to demonstrate any bad faith or point to any "frivolous" actions that are completely without merit. As explained *supra* at Point II, designating the items as confidential was not in bad faith or completely without merit, as it is plaintiff's burden to show. Indeed, there is a specific sub-paragraph of the protective order that expressly states that confidential materials include materials related to agency investigations. This provision further states that other materials may in good faith be designated as confidential.  Finally, had defendants believed the protective order did not apply in this instance, defendants would have moved for a separate protective order prior to producing the items. There is no bad faith here or any frivolousness. Indeed, even if defendants' longstanding interpretation was found to be inaccurate, which it should not, defendants' interpretation is based on a good faith and entirely

reasonable reading of the language of the order.  As such, plaintiff cannot meet his burden to demonstrate that sanctions are warranted or in any manner appropriate here.  *See O'Hearn v. Bodyonics, Ltd.*, 56 F. Supp. 2d 302, 312-13 (E.D.N.Y. 1999), quoting *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 927 (S.D.N.Y. 1991) (denying contempt motion for noncompliance with unambiguous order, because "the actions of the defendants were based on 'a good faith and reasonable interpretation of the court order'").

Though it is his burden to explain why sanctions are warranted, plaintiff does no more than identify a disagreement between the parties about the applicability of a protective order.  But failing to acquiesce to plaintiff's flawed reading of the protective order is not bad faith or frivolous.  Plaintiff's *ipse dixit* assertions simply underscore that there is no evidence of bad faith that he can point to. Indeed, when the parties conferred and plaintiff stated by phone that he (initially) wished to produce the video to BCDA, in the spirit of good faith, defendants did not object to that. This undercuts plaintiff's argument.  What plaintiff is asking for is for defendants to be penalized for diligently producing discovery.  The Court should not indulge this.

Furthermore, sanctions under Rule 37(a)(5) of the Federal Rules of Civil Procedure is equally inappropriate.  This rule concerns motions to compel discovery or a disclosure.  Plaintiff is not attempting to compel any discovery here: in fact, the discovery at issue has been produced to him by defendants in a timely manner without any judicial intervention.  What plaintiff is seeking is the removal of a confidential designation, which is not what the rule contemplates.

Finally, plaintiff's failure to cite to legal authority or case law in support of his motion for sanctions provides yet another ground to reject of his arguments.  The Court "has no obligation to consider an argument for which a party has cited no legal authority." *Glidepath Holding v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 n. 9 (S.D.N.Y. 2007); *see also Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (noting that court's role is not to act as an advocate and it is not required to "research . . . legal theor[ies]" on behalf of a litigant).  Indeed, conclusions with no citations to the record or any legal authority for support do not constitute adequate briefing. *Weinrib v. Winthrop-University Hosp.*, No. 14-cv-953 (JFB) (AKT), 2016 U.S. Dist. LEXIS 37102, at *20 n.3 (E.D.N.Y. Mar. 22, 2016) (citation and quotation omitted).

### B.   *The Court Should Sanction Plaintiff.*

As demonstrated above, plaintiff wholly failed to establish any basis to sanction defendants, and indeed none exists.  Contrastingly, plaintiff should be sanctioned, under § 1927 and the inherent power of the Court, for wasting the Court's time and the City's limited resources in making such a patently frivolous motion. As described in the legal authority *supra*, bad faith can be inferred when a party takes frivolous actions that are completely without merit. Here, plaintiff's sanctions motion is entirely without color and brought in bad faith.  *Hannah v. Walmart Stores, Inc*., Nos. 18-2201-cv, 18-2206-cv, 18-2346-cv, 2020 U.S. App. LEXIS 3485, at *9 (2d Cir. Feb. 3, 2020).   And his act of bringing this frivolous motion is even more egregious in light of the COVID-19 pandemic.

The filing of a motion for sanctions can itself lead to sanctions. *See E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008).  Although addressing a motion for sanction under Rule 11, the *E. Gluck Corp.* court held: "In cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.'" *Id*.,

quoting Advisory Committee Note and citing *Koar v. United States*, No. 96 Civ. 5166, 1997 U.S. Dist. LEXIS 15408 at *5 n.2, (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant."). The court made clear that sanctions should be used as a last resort and that "Rule 11 motions should not be used 'to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.'" *E. Gluck Corp.,* 252 F.R.D. at 179.

A disagreement about the reading of a protective order is not grounds for sanctions unless the movant can establish that the challenged interpretation lacks any merit or has been rejected by the court. *See supra* at Point III.A.   Plaintiff does neither here, nor can he come close to meeting this standard.   Plaintiff provides no case law or even persuasive analysis that defendants' long-standing interpretation or application of the order was flawed or has been rejected by any court; because none exists. Rather he just asserts an alternate and inaccurate interpretation of the order.  In an attempt to avoid this frivolous motion practice, we brought all of this to plaintiff's attention prior to filing his motion, yet plaintiff ignored our efforts and then failed to address our arguments in his motion. This conduct both unreasonably and vexatiously multiplied this proceeding, and did so after plaintiff accepted defendants' Rule 68 offer.

Finally, what makes this even more egregious is that plaintiff brought this frivolous motion whilst the world—but in particular New York City—deals with the COVID-19 pandemic.  Rather than being mindful of the instability and stress associated with this time and acknowledge that the Court's and the City's limited resources are being spent on more pressing and serious concerns, plaintiff has instead chosen to squander the Court's time with a motion in a case where the parties have already reached a settlement, where defendants agreed that the videos at issue could be shared with BCDA, where BCDA found no evidence to support a criminal charge of perjury, and where he has no cognizable or articulated basis for sanctions. This sort of cavalier and vexatious abuse of the judicial process—particularly in a sensitive time like the present—should be penalized.

## IV.   Conclusion.

Thus, defendants respectfully request that the Court: (1) deny plaintiff's motion to remove the confidentiality designation; (2) deny plaintiff's motion for sanctions; and (3) sanction plaintiff.[7]

Thank you for your consideration herein.

Respectfully submitted,

Brachah Goykadosh
*Senior Counsel*
Special Federal Litigation Division

---

[7] The Court should reject any attempts by plaintiff to raise new arguments on reply. *Tardif v. City of New York*, 344 F. Supp. 3d 579, 597 (S.D.N.Y. 2018) (declining to consider new arguments on reply).