USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERMINIO ROBLES,

       Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

       Defendants.

19-CV-6581 (AT) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiff Herminio Robles filed this action on July 15, 2019, seeking damages pursuant to 42 U.S.C. § 1983 and state law for alleged violations of his civil rights by various officers of the New York Police Department (NYPD), including Officer John M. Henderson. Am. Compl. (Dkt. No. 23) ¶¶ 9-10. According to plaintiff, he was arrested without probable cause on April 18, 2018, while waiting on a subway platform, and taken to the Transit District 11 precinct for processing. *Id*. ¶¶ 11-22, 56. At the precinct, Officer Henderson "pushed Plaintiff – who was handcuffed at the time – into the gate of the cells in the precinct, and then to the ground." *Id*. ¶ 23. Henderson then falsely swore out a criminal court complaint alleging, among other things, that plaintiff kicked Henderson in the shin while being held at the precinct. *Id*. ¶¶ 31-32. On January 30, 2019, the charges against plaintiff were dismissed on speedy trial grounds. *Id*. ¶ 37.

    Plaintiff's civil rights claims have been resolved. However, the parties continue to disagree – heatedly – as to the confidentiality of certain discovery materials exchanged pursuant to Local Civil Rule 83.10. That dispute, in turn, has spawned cross-motions for sanctions and considerable personal rancor between counsel. For the reasons that follow, plaintiff's motion to remove the confidentiality designation from the disputed discovery materials will be granted in part and denied in part. No sanctions will be awarded.

## Rule 83.10

In this district, Local Civil Rule 83.10 governs civil cases filed by a represented party "alleging the use of excessive force, false arrest, or malicious prosecution by employees of the NYPD in violation of 42 U.S.C. § 1983." In an effort to streamline the litigation of such cases, the rule requires, among other things, that the parties engage in early limited discovery, followed by, in most cases, a mediation session. *See* Rule 83.10(5), (8). The discovery exchange is governed by a standard form of protective order annexed to Local Civil Rule 83.10 (the Rule 83.10 Protective Order), which permits the parties to designate certain documents and information as "Confidential Material." Rule 83.10 Prot. Order ¶¶ 2-6. In the event of a disagreement as to whether an item was properly designated as confidential, "counsel shall in good faith attempt to resolve such conflict." *Id*. ¶ 7. If the conflict cannot be resolved, "the objecting party shall, within 45 days of the initial objection, request the Court to remove the designation." *Id*. The Rule 83.10 Protective Order "survive[s] the termination of the litigation," and material deemed confidential remains "confidential for all time." *Id*. ¶ 10.

## Procedural History

In this case, the parties' mediation session was scheduled for March 4, 2020. (Dkt. No. 21.) On January 29, 2020, as part of the required pre-mediation discovery, defendants produced two surveillance videos, both showing (from slightly different angles) the interaction between plaintiff and Officer Henderson at Transit District 11. That same day, plaintiff filed a letter-motion asking the Court to remove the confidentiality designation from the videos. (Dkt. No.

28.) By Order dated January 31, 2020 (Jan. 31 Order) (Dkt. No. 31), the Court denied the motion, without prejudice to renewal after the parties completed their mediation.[1]

On February 13, 2020, defendants served an Offer of Judgment upon plaintiff pursuant to Fed. R. Civ. P. 68, in the amount of $1001.00 "plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims." (Dkt. No. 40.) On February 17, 2020, plaintiff accepted the offer in writing, thus mooting the mediation. *Id.*

On March 19, 2020, plaintiff renewed his motion asking the Court to remove the confidentiality designation from the two videos, arguing that they support his allegations concerning Officer Henderson, and that public policy demands that his counsel be free to share that evidence with "public defender offices, private criminal defense attorneys, civil rights colleagues, and the press." Pl. Ltr. (Dkt. No. 37) at 1-2.[2] Additionally, plaintiff asks that the confidentiality designation be removed from "an audio recording of the phone call between a Captain Niebrzydowsk and a Police Officer Abadia of the NYPD's Internal Affairs Bureau concerning the incident at issue in this case," and from a 5-page "Internal Case Management System Worksheet – Internal Affairs Log," both created as part of the NYPD's investigation into

---

[1] The Court was unconvinced that the parties had made a good-faith effort to resolve the dispute on their own, or that plaintiff required emergent relief. As noted in the Jan. 31 Order, the Rule 83.10 Protective Order permitted counsel to share "confidential" discovery materials with plaintiff himself (and with any retained experts or consultants) and to use them "for the purpose of preparing or presenting" the case, including at the upcoming mediation. Rule 83.10 Prot. Order ¶¶ 5(a)-(b).

[2] Plaintiff sought and requested permission to file the contested discovery materials under electronic seal (Dkt. Nos. 39, 45), permitting the Court to view the videos, listen to the audio recording, and review the Internal Affairs Log *in camera*. The two surveillance videos show a portion of the Transit District 11 police precinct, including what appears to be two holding cells, an open area outside the cells, furnished with several desks and chairs, and a hallway leading from the open area to other (unseen) portions of the precinct. The only individuals who can be seen on the videos are an arrestee (presumably plaintiff Robles), the NYPD officer escorting the arrestee (presumably Officer Henderson), and the additional NYPD officers who responded, after Henderson used force on Robles, and assisted in placing Robles in one of the cells.

the use of force against plaintiff. *Id*. at 1. Characterizing defendants' confidentiality designations as "entirely improper" and their legal position as "frivolous," plaintiff also seeks sanctions, in the form of his reasonable attorneys' fees expended on the pending motion, pursuant to Fed. R. Civ. P. 37(a)(a), 28 U.S.C. § 1927, and/or the Court's inherent power. *Id*. at 1, 4.

On March 23, 2010, defendants filed a responding letter (Def. Ltr.) (Dkt. No. 42), opposing the requested relief and cross-moving for sanctions against plaintiff. Defendants explain that they were "forced" to cross-move, "not only because [plaintiff] brings a meritless sanctions motion for illegitimate reasons; but because he brings his frivolous motion, squandering the Court's and the City's limited resources, during the worst of all times, in the middle of a pandemic." *Id*. at 1. On March 25, 2020, plaintiff filed his reply letter (Pl. Reply Ltr.) (Dkt. No. 46), characterizing defendants' arguments as "disingenuous[ ]" and renewing his request for sanctions "because of the frivolous, bad faith positions and arguments advanced by Defendants." Pl. Reply Ltr. at 4.[3]

## Analysis

The parties' dispute turns on the application of ¶ 2 of the Rule 83.10 Protective Order, which defines "Confidential Materials" to mean:

---

[3] Plaintiff's moving letter slightly exceeds the four-page limit set forth in § 1(d) of this Court's Individual Practices. *See* Pl. Ltr. at 5. The extra length is due in part to the several paragraphs that plaintiff devotes to explaining why this Court's January 31 Order was "unfairly critical of the undersigned for making the initial application." *Id*. at 2. Defendants' responding letter critiques plaintiff's overlength submission, Def. Ltr. at 1 n.1, but is itself seven pages long. The extra length is due in part to the several paragraphs that defendants devote to explaining why both branches of plaintiff's motion are "frivolous," "entirely without color," "brought in bad faith," and "even more egregious" in light of the COVID-19 pandemic. *Id*. at 6-7. Plaintiff's reply letter once again slightly exceeds this Court's four-page limit. The extra length is due in part to a lengthy footnote accusing defendants' counsel of terminating negotiations over the attorneys' fees due to plaintiff (an issue left open by the Offer of Judgment) "[o]ut of pique over the fact that Plaintiff sought sanctions in the instant application," which plaintiff characterizes as "immature," particularly "in the midst of the Coronavirus pandemic." Pl. Reply Ltr. at 4.

> (a) New York City Police Department ("NYPD") personnel and disciplinary-related records, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agencies, (b) plaintiff's medical records, (c) a list from the New York City Police Department that identifies plaintiff's prior arrests by date of arrest, charge(s) and disposition, including all sealed arrests, and (d) other documents and information that may in good faith, during the pendency of this litigation, be designated "Confidential Material" by the parties or the Court, except that such documents and information shall not be designated "Confidential Materials" to the extent that they relate to the incident(s) underlying the Complaint in the action, are obtained by the parties by subpoena or pursuant to the New York Freedom of Information Law ("FOIL"), or are otherwise publicly available.

Plaintiff argues that since the videos, the audio file, and the Internal Affairs Log "relate to the incident(s) underlying the Complaint in the action," they fall within the exception set out in ¶ 2(d) (which in his view modifies every subsection of ¶ 2, not just subsection (d)), and consequently may not be designated "confidential." Pl. Ltr. at 2.

Defendants take the position that all of the challenged materials were properly designated pursuant to ¶ 2(a), because they are "records of investigations regarding the conduct of Members of the Service of the NYPD," and therefore "remain confidential for all time" pursuant to ¶ 10. Def. Ltr. at 4-5. Defendants argue that the language on which plaintiff relies "modifies sub-paragraph 2(d) only and not the entirety of paragraph 2," pointing out that under plaintiff's interpretation the exception would swallow the rule, permitting litigants to make police personnel and disciplinary records publicly available, along with the medical records of every § 1983 plaintiff in the Southern District of New York, so long as those materials "relate[d]" to an incident alleged in the complaint. *Id.* at 4.

Although the videos appear to be routine surveillance footage, created in the ordinary course, defendants argue that they too qualify for confidentiality under ¶ 2(a) because they "would not have been saved but for the fact that they were part of the [investigatory] file." Def. Ltr. at 4. Defendants add that there are "security concerns with disseminating videos that depict

5

the non-public areas of a [police] precinct," *id*., including the "risk of potential escape or potential interference with an arrest and/or detainment" in the event the videos were "widely disseminated" on social media or though the news media. *Id*. at 5.

Plaintiff calls the security argument "conclusory," noting that "many members of the public," including arrestees, "routinely" see the holding area of Transit District 11, which looks much like the holding areas "in police precincts throughout the country." Pl. Reply Ltr. at 2-3. He argues that nothing in the videos "would justify any belief whatsoever that anyone would, or could, use the video at issue herein to escape from custody, to interfere with any NYPD operations, or for any other particular nefarious purpose, whether the video resides solely with me or is published far and wide on the internet." *Id*.

Notwithstanding each side's seemingly unshakeable confidence that the other side's interpretation of the Rule 83.10 Protective Order is frivolous, no party cites a single authoritative case, from this or any other jurisdiction, concerning either the proper interpretation of ¶ 2(d) or the need, *vel non*, to keep police precinct videos confidential.[4]

Interpretation of a court rule, like interpretation of a statute, must begin with its plain language. *See*, *e.g*., *United States v. John Doe, Inc. I*, 481 U.S. 102, 109 (1987); *Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 355 (1981); *S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 414 (S.D.N.Y. 2014); *In re Fosamax Prod. Liab. Litig.*, 2013 WL 6669706, at *3 (S.D.N.Y. Dec. 18, 2013.) In this case, the carve-out on which plaintiff relies ("except that such documents and information

---

[4] In lieu of such authority, plaintiff's counsel assures the Court that his interpretation is consistent with "how it has been since Local Civil Rule 83.10 . . . went into effect, and the [New York City] Law Department has not to my memory in other police misconduct litigations sought to have investigatory materials . . . related to the underlying litigation incident be treated as confidential." Pl. Reply Ltr. at 2. Defendants' counsel, however, insists that "disciplinary investigation files are never produced . . . without a protective order in place." Def. Ltr. at 4. This Court cannot, of course, accept either attorney's unsworn representations concerning past practice as a substitute for legal authority or legal analysis.

shall not be designated 'Confidential Materials' to the extent that they relate to the incident(s) underlying the Complaint in the action") appears as part of ¶ 2(d) of the Rule 83.10 Protective Order, indicating that it is intended to modify that subsection alone. Common sense points to the same conclusion. The contrary construction, urged by plaintiff, would render non-confidential many of the same documents expressly granted confidentiality in subsections (a), (b), and (c): NYPD personnel and disciplinary records, plaintiff's medical records, and plaintiff's prior arrests.[5] The Court therefore concludes that the audio recording of the IAB interview, as well as the Internal Affairs Log, were properly designated as confidential – notwithstanding that they "relate to the incident(s) underlying the Complaint in the action" – because they were created as part of an "investigation[] regarding the conduct of Members of the Service of the NYPD." Rule 83.10 Prot. Order ¶ 2(a).[6]

The Court reaches a different conclusion concerning the videos showing the interaction between plaintiff and Officer Henderson inside the precinct at Transit District 11. Those videos

---

[5] It is true, as plaintiff points out, that the carve-out applies only to records that "relate to the incident(s) underlying the Complaint in the action." Pl. Ltr. at 4. However, the term "relate" is both broad and vague. Indeed, Rule 83.10 requires the parties to exchange evidence that does not arise directly out of the underlying incident but nonetheless "relates" to it, such as medical records or releases regarding any "pre-existing physical or mental condition" of the plaintiff "that reasonably appears to be *related* to the injury for which compensation is sought." *See* Rule 83.10(1)(b) (emphasis added), (5)(a)(v), (5)(b)(ii). Thus, the interpretation urged by plaintiff would seemingly leave the NYPD free to publicly disseminate a § 1983 plaintiff's medical records, including records concerning any "related" pre-existing condition.

[6] "Judicial documents" are subject to a "presumption of access" under the common law and the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-21 (2d Cir. 2006) (holding that documents "submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches"). However, there is no corresponding public right of access to materials produced during the initial stages of discovery. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach."). In this case, plaintiff accepted an offer of judgment rather than pursue his claims through summary judgment and/or trial. Consequently, the documents now at issue will never become "judicial documents" for purposes of either the common law or the First Amendment right of access.

may now be "part of the disciplinary file," Def. Ltr. at 4, but they were not created for investigatory purposes and do not reflect or reveal any investigatory techniques or conclusions. To the contrary: they appear to constitute routine precinct surveillance footage created in the ordinary course. Consequently, they are not protected by ¶ 2(a).

Nor may defendants keep the videos confidential for all time merely because they "depict the non-public areas" of one of New York City's 77 police precincts. Def. Ltr. at 4. In the absence of an applicable provision of the Rule 83.10 Protective Order, it is defendants' burden to show "good cause" for a protective order restricting the dissemination of discovery materials. Fed. R. Civ. P. 26(c). "Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *Shingara v. Skiles,* 420 F.3d 301, 306 (3d Cir. 2005)). Defendants have not met that burden. The Court accepts that the general public is not familiar with "the precise layout" of the interior of Transit District 11. Def. Ltr. at 5. It does not follow, however, that permitting plaintiff to share the videos would create a "risk of potential escape or potential interference with an arrest and/or detainment," *id*. at 4, particularly given that police precincts (unlike jails and prisons) typically house arrestees only long enough to complete their initial processing. *See Criminal Justice Process*, New York City Police Department, https://www1.nyc.gov/site/nypd/services/victim-services/criminal-justice-process.page (last visited Mar. 27, 2020). It is hard to imagine that such an arrestee could – while being processed – locate the videos at issue here, study them, and use them to plan an escape or other misconduct.[7]

---

[7] "Second Circuit case law concerning the protection of jail security footage is surprisingly scarce." *Harris v. Livingston County*, 2018 WL 6566613, *2 (W.D.N.Y. Dec. 13, 2018). In *Harris*, the court agreed that video surveillance footage from the Livingston County Jail should be subject to a protective order because it "could be used by inmates to create a disturbance or uprising, or attempt to escape." *Id*.; *accord Sampel v. Livingston County*, 2019 WL 6695916, at

## Conclusion

Plaintiff's renewed letter-motion (Dkt. No. 38) is GRANTED IN PART AND DENIED IN PART. The confidentiality designation is removed as to the videos, but remains in place as to the audio recording and the Internal Affairs Log. The parties' respective sanctions motions are DENIED. Counsel are reminded that *ad hominum* attacks ordinarily serve only to weaken the force of an attorney's legal argument, and that calling an opponent's position "frivolous" does not make it so, particularly where – as here – neither side was able to marshal any authoritative precedent in support of its own position.

Dated: New York, New York
      March 27, 2020

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

*3 (W.D.N.Y. Dec. 9, 2019). The Court has not located any comparable authority considering whether police precinct video footage presents similar risks.